IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

KENNETH WAYNE MIZE,    )
      )
    Plaintiff,    )
      )
v.    )    Case No. CIV-23-374-GLJ
      )
MICHELLE KING,[1]    )
Acting Commissioner of the Social  )
Security Administration,    )
      )
    Defendant.    )

**OPINION AND ORDER**

Claimant Kenneth Wayne Mize requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] In January 2025, Michelle King became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. King is substituted for Kilolo Kijakazi as the Defendant in this action.

Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2]  Step one requires Claimant to establish that he is not engaged in substantial gainful activity. Step two requires Claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If Claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that Claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if Claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was thirty-one years old at the time of the administrative hearing. (Tr. 43). He completed high school and has previously worked as a composite cashier/checker, stock clerk, home attendant, and construction worker II. (Tr. 27, 191). Claimant alleges he has been unable to work since his amended alleged onset date of March 14, 2020, due to congestive heart failure, type II diabetes noninsulin dependent, hypertension, general anxiety disorder, gout, and obesity. (Tr. 190).

## Procedural History

On September 7, 2021, Claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Glenn Neel held an administrative hearing and determined that Claimant was not disabled in a written decision dated March 27, 2023 (Tr. 17-29). The Appeals Council denied review, so the ALJ's decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, the ALJ found that Claimant had the severe impairments of obesity, congestive heart failure/non-ischemic  cardiomyopathy,    diabetes    mellitus,    hypertension,    gout,

gastroesophageal reflux disease (GERD), obstructive sleep apnea, and arthralgia, as well as the nonsevere impairment of depression with anxiety. (Tr. 20). Next, he found that Claimant's impairments did not meet a listing. (Tr. 21). At step four, he found that Claimant retained the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (Tr. 21). The ALJ then determined that although Claimant could not return to his past relevant work, he was nevertheless not disabled according to Medical-Vocational Rule 202.21 ("the Grids"). (Tr. 27-28).

## Review

Claimant contends the ALJ erred in assessing his RFC, both as to the medical evidence and the consistency evaluation of his statements in comparison to the evidence. The Court agrees as to the consistency evaluation, and the decision of the Commissioner must therefore be reversed.

The relevant medical evidence reflects that over a year prior to Claimant's alleged onset date, Claimant was hospitalized for about a week following complaints of shortness of breath due to bouts of bronchitis, and lower chest pain. Upon discharge on February 2, 2019, his diagnoses included cardiomyopathy, questionable viral, as well as accelerated elevated hypertension (180s over 150s systolic), cardiomegaly, congestive heart failure diastolic and systolic (acute on chronic), and morbid obesity (394 pounds). (Tr. 928-929). An echocardiogram performed on January 28, 2019 showed an enlarged left ventricular size and severely reduced left ventricular systolic function, global hypokinesis with left ventricular ejection fraction of less than 20%, and moderate left ventricular hypertrophy. (Tr. 929, 746-751, 758-761). At a follow-up appointment on February 13, 2019, Claimant

was assessed with congestive heart failure, morbid obesity, and obstructive sleep apnea. (Tr. 547). An echocardiogram performed on July 9, 2019, showed normal left ventricle size and left ventricle systolic function, mildly increased wall thickness, and an estimated ejection fraction of 60-65%, along with mild left ventricular hypertrophy. (Tr. 515-516, 839-842). On August 23, 2019, Claimant presented to the hospital believing he was having a congestive heart failure exacerbation. While he had hypertension upon arrival and had not taken his daily meds, he did not appear to have congestive heart failure exacerbation and he was discharged to home in stable condition. (Tr. 1046).

On March 13, 2020, one day before the alleged onset date, Claimant appeared for a three-month follow-up appointment, at which time his blood pressure was elevated (156/124) and Nurse Practitioner Timothy Olive noted Claimant had been out of his antihypertensives for several days. (Tr. 596). Claimant's weight was recorded as 373 pounds. (Tr. 600). ARNP Olive assessed Claimant with benign hypertension, type 2 diabetes mellitus without complication or long-term use of insulin, congestive heart failure of unspecified HF chronicity, idiopathic chronic gout of multiple sites without tophus, and obstructive sleep apnea. (Tr. 602).

On June 16, 2020, ARNP Olive found Claimant's congestive heart failure was stable at that time, noting the most current echocardiogram showed and ejection fraction of 60-65%. (Tr. 323). In October 2020, Claimant was treated for leukocytosis (abnormally high number of white blood cells), which the doctor found was likely reactive to secondary multiple medical comorbidities and morbid obesity. (Tr. 310). His blood pressure was 135/100 at the time, and he weighed 340 pounds. (Tr. 309).

In March 2021, ARNP Olive noted claimant was active and independent at that time and findings were largely normal upon exam. (Tr. 286, 289-290). Claimant's blood pressure was 144/87 and he weighed 337 pounds. (Tr. 289). By June 2021, Claimant weighed 342 pounds, and his blood pressure was recorded at 144/88. (Tr. 638). Claimant reported staying up late every night playing video games and sleeping late into the afternoon. (Tr. 634). The review of systems and physical exam were normal, and Claimant was counseled on diet and weight. (Tr. 638-639). ARNP Olive assessed claimant with type 2 diabetes mellitus without complication, idiopathic chronic gout of multiple sites without tophus, benign hypertension, and GERD. (Tr. 639). His assessment notably no longer included congestive heart failure. (Tr. 639). Records reflect a blood pressure reading of 151/106 on September 21, 2021, but a reading of 127/87 on October 21, 2021. (Tr. 1090-1091). His blood pressure was again elevated on December 16, 2021, at 143/96. (Tr. 1098).

On December 3, 2021, Claimant was sent for another echocardiogram as part of his disability application. (Tr. 1071). Upon evaluation, Claimant's left ventricle size was normal, he had mild concentric left ventricular hypertrophy, and his overall left ventricular systolic function was mild to moderately impaired with an ejection fraction between 40-45%. (Tr. 1072). In October 2022, Claimant's diagnoses included arthralgias, unspecified joint, as well as benign hypertension, type 2 diabetes mellitus with diabetic polyneuropathy without long-term current use of insulin. (Tr. 1579). ARNP Olive recommended a rheumatologic workup due to the arthralgias and a butterfly rash, as well as a family history of lupus. (Tr. 1574).

State reviewing physicians found Claimant could perform light work, with no manipulative, postural, or environmental limitations. (Tr. 77-78, 86-86).

At the administrative hearing, Claimant testified that that his weight was around 340 pounds (he is six feet one inches tall), and that his weight and gout, as well as nerve pain from diabetes, makes it hard for him to get around. (Tr. 57-58). He testified that the congestive heart failure is still bothering him in that he retains water and has swelling easily, and needs to elevate his legs about once per week. (Tr. 58-59). Additionally, he testified that his gout acts up about once per month for up to two or three days. (Tr. 59-60). Claimant also stated that he has difficulty walking because he is out of breath all the time, and has pain from walking and from gout. (Tr. 62). He explained that he mostly stays in bed because he does not want to push himself into going into the hospital, and he has really low energy. (Tr. 64). When asked about playing video games, he says he does not do that anymore and mostly stays in bed. (Tr. 66).

In his written opinion at step four, the ALJ thoroughly summarized Claimant's hearing testimony as well as the medical evidence in the record. While the ALJ did not specifically note Claimant's ejection fraction in January 2019 (over a year prior to the alleged onset date of March 14, 2020), he noted Claimant's ejection fraction results in both March 2020 (60-65%) and December 2021 (40-45%). (Tr. 23-24). Additionally, he noted Claimant's weight and largely consistently high blood pressure. (Tr. 23-24). The ALJ found Claimant's statements regarding his symptoms to be inconsistent with the record, noting care for the family dog including walking it, tending to his personal care needs, and shopping once every two weeks. (Tr. 25). Additionally, the ALJ noted that none of

Claimant's treatment providers gave any opinion on his ability to work or any concomitant restrictions related to his impairments. (Tr. 25). The ALJ then found the state reviewing physician opinions persuasive, even after additional evidence added to the record following their evaluations, because it was consistent with the medical record and even the Claimant's testimony. (Tr. 25-26). The ALJ found Claimant's testimony unpersuasive, noting that the medical record reflected an individual with "significant functional capacity and not an individual unable to sustain regular and continuing work[.]" (Tr. 26). Noting Claimant routinely had normal physical exams with no abnormalities, his rheumatological work-up was negative, and his impairments were stable when he was compliant with medication, the ALJ found a light exertional level was appropriate. After finding no consultative examination was necessary, nor were interrogatories to a treating source, the ALJ found Claimant could not return to his past relevant work but that he was nevertheless not disabled. (Tr. 28).

First, Claimant contends the ALJ's step three analysis was deficient and that Claimant should have been evaluated in December 2022 to determine if he met listing 4.02 for chronic heart failure. Although Claimant bears the burden of proof at step three to establish that he meets or equals the requirements for a listed impairment, *see Fischer–Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton*, 79 F.3d at 1009 [quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why the claimant was not

disabled at step three. *Id.* (citing *Cook v. Heckler*, 783 F.2d 1168, 1172–73 (4th Cir. 1986)).

Listing 4.02 requires, *inter alia*, systolic failure with ejection fraction of 30 percent or less during a period of stability AND persistent symptoms, three or more separate episodes of acute congestive heart failure within a twelve-month period, OR inability to perform on an exercise tolerance test at a workload equivalent to 5 METS or less. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02. Claimant contends the ALJ should have ordered further evaluation to see if this Listing is met. However, Claimant points to no evidence in the record to support a finding that he might meet this Listing (even with further testing), instead only speculating that it is possible if more testing is done. In other words, Claimant asks the Court to likewise engage in speculation or to reweigh the evidence in the record, which the Court cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). Moreover, as set forth below, the ALJ clearly considered the effect of the Claimant's impairments when assessing his RFC. *See Padilla v. Colvin*, 2015 WL 5341788, at *4 (D. Colo. Sept. 15, 2015) (finding no reversable error at step three where the claimant did not "show with specificity how the ALJ may have erred in his evaluation" and "it [was] clear that the ALJ considered the effect of [the claimant's impairments] on her RFC.").

Next, Claimant contends the ALJ erred in assessing his RFC in relation to the medical evidence because he cannot perform the RFC of unlimited light work. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any

related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013). Here, the ALJ has fulfilled his duty.

Claimant contends the ALJ failed to account for his inability to seek medical attention, and that the 2021 echocardiogram did not sufficiently establish his functional limitations. He asserts the ALJ failed to identify specific medical evidence to support his conclusions and fails to account for his uncontrolled hypertension. Additionally, he asserts that the 2021 echocardiogram shows decompensation in heart functioning that the ALJ failed to include in the RFC and that the ALJ committed error in failing to determine how much additional decompensation occurred by December 2022. Contrary to Claimant's arguments, the ALJ discussed all the evidence in the record, including these objective findings and the evidence related to his functional abilities, as well as his reasons for reaching the RFC. *Hill v. Astrue*, 289 Fed. Appx. 289. 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence

on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).  The evidence does not reflect that Claimant had further limitations than those posed in the RFC.  The ALJ clearly scoured the record for functional limitations but concluded that Claimant routinely had normal physical exams with *no* abnormalities noted, no findings of rheumatological abnormalities, and that he was stable when compliant with medications.  Additionally, the ALJ pointed out that none of his treatment providers included functional limitations.  This appears to be due to the repeatedly normal review of systems and physical examinations in the record.  Furthermore, Claimant has pointed to no medical documentation providing further limitations despite the record containing consistently elevated blood pressure and consistent morbid obesity.  Because he points to no evidence of further limitation other than his own assertions, the Court declines to find an error here.  *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

As part of the above argument, Claimant argues that the ALJ failed to develop the record by ordering a consultative examination or re-contacting his treating physicians. It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services,* 13 F.3d 359, 360–361 (10th Cir.1993) (citing *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992)).  However, "it is not the ALJ's duty to be the

claimant's advocate[,]" but "the duty is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that she is disabled under the regulations." *Henrie,* 13 F.3d at 361 [citations omitted]. If the ALJ had doubts as to any of the evidence, he *could have* re-contacted Claimant's treating physicians to clear it up, *see* 20 C.F.R. § 404.1520b(c) ("[I]f after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency . . . We may recontact your treating physician, psychologist, or other medical source."), but he was under no obligation to do so, as the claimant implies, because the ALJ has broad latitude in deciding whether or not to order a consultative examination. *Hawkins,* 113 F.3d at 1166 (citing *Diaz v. Secretary of Health & Human Services,* 898 F.2d 774, 778 (10th Cir. 1990)). "When the claimant has satisfied his or her burden" of presenting evidence suggestive of a severe impairment, "then, and only then, [it] becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id.* at 1167. A consultative examination also may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record. *Id.* at 1166 [citations omitted]. Claimant asserts that the ALJ should have ordered an additional CE exam to determine his functional limitations in light of the 2021 ejection fraction results, but the need is not clearly established by the record here. *Hawkins,* 113 F.3d at 1168 (noting that without a request by counsel, a duty will not be imposed on the ALJ to order an examination unless the need is clearly established in the record). The ALJ specifically found that the record contained

records that were complete and detailed enough to make a decision, and indeed the echocardiogram from December 2021 appears to be a test ordered as part of the disability claim, *i.e.*, a consultative exam itself. *See* 20 C.F.R. § 404.1519f ("We will purchase only the specific examinations and tests we need to make a determination in your claim. For example, we will not authorize a comprehensive medical examination when the only evidence we need is a special test, such as an X-ray, blood studies, or an electrocardiogram."). Claimant would like further evaluation, but the ALJ appropriately pointed out that none of the records included any sort of functional limitation as to claimant. Indeed, even when he was diagnosed with arthralgias, Claimant had a butterfly/Malar facial rash but no joint tenderness, deformity, or swelling, with follow-up rheumatology being normal. Claimant has not met his burden on this issue.

Finally, Claimant argues that the ALJ failed to evaluate his noncompliance in following his prescribed treatment, as required in Social Security Ruling 18-3p, 2018 WL 4945641 (Oct. 2, 2019). As the Commissioner correctly points out, however, an ALJ is only required to apply Soc. Sec. R. 18-3p if he first determines that an individual is entitled to disability regardless of whether the individual followed the prescribed treatment. 2018 WL 4945641, at *2-3. The ALJ made no such finding. In fact, the ALJ only noted that Claimant was stable when compliant with medications. The ALJ also pointed out, however, that Claimant routinely had a normal review of system and physical exam, and there was no difference between when he was compliant and when he was not. *See Allred v. Comm'r, SSA*, 2023 WL 3035196, at *3 (10th Cir. Apr. 21, 2023) ("Ms. Allred argues that the ALJ should have applied SSR 18-3p because he mentioned her noncompliance

with prescribed medication. But by its own terms, SSR 18-3p did not apply in this case. It applies only if the claimant is otherwise entitled to benefits. Because the ALJ never found Ms. Allred otherwise entitled to benefits, he did not need to apply SSR 18-3p."). "Contrary to Plaintiff's claim, the ALJ's RFC discussion was not based solely on Plaintiff's medication non-compliance. Rather, his non-compliance was one factor among many discussed by the ALJ." *Houston A. G., v. O'Malley*, 2024 WL 3027414, at *7 (N.D. Okla. June 17, 2024).

However, *Allred* nevertheless directs that an ALJ must consider the *Frey*[3] factors before discounting Claimant's symptom allegations based on a failure to pursue treatment or take medication. *Allred*, 2023 WL 3035196, at *4 ("[T]he ALJ should have considered the *Frey* factors before discounting Ms. Allred's claim of disabling symptoms based on her periods of treatment noncompliance."). The *Frey* factors for "reviewing the impact of a claimant's failure to undertake treatment" are "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." 816 F.3d at 517. In *Allred*, the Tenth Circuit instructed courts to follow *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993), which held "that an ALJ must consider the *Frey* factors before discounting the credibility of a claimant's symptom allegations based on a failure to pursue treatment or take medication." *Allred*, 2023 WL 3035196, at *3 (citing *Thompson*, 987 F.2d at 1490). *See, e.g.*, Tr. 1079 ("[H]e gives no

---

[3] *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).

reason for stopping his medication other than he seems to be depressed, he reports depressive thoughts and lack of interest in usual activities."). Upon review, the ALJ did not have the benefit of *Allred*, as his opinion pre-dates *Allred*, in which the Tenth Circuit clarified that *Thompson*, and not *Qualls v. Apfel*, 206 F.3d 1368, 1372(10th Cir. 2000) ("The ALJ here did not purport to deny plaintiff benefits on the ground he failed to follow prescribed treatment. Rather, the ALJ properly considered what attempts plaintiff made to relieve his pain—including whether he took pain medication—in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling."), applies. Because the Tenth Circuit is clear that the ALJ should have considered the *Frey* factors before discounting Claimants claim of disabling symptoms, which was at least in part based on improvement with medication compliance, the case must be reversed.

### Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 13th day of February, 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**